UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: SHELLY JONES AND WARREN JONES, <br><br> Appellants, <br><br> v. <br><br> PENNYMAC LOAN SERVICES, LLC, <br><br> Appellee. | No. 24-CV-0200 (KMK) <br><br> OPINION & ORDER |

Appearances:

Shelly Jones
Warren Gregory Jones
*Pro Se Appellants*

Andrea M. Roberts, Esq.
Diana M. Eng, Esq.
Susan Kuruvilla, Esq.
Blank Rome LLP
New York, NY
*Counsel for Appellee*

KENNETH M. KARAS, District Judge:

  Shelly Jones and Warren Gregory Jones ("Appellants"), proceeding pro se, appeal from an Order of the United States Bankruptcy Court for the Southern District of New York dismissing their adversary proceeding against PennyMac Loan Services, LLC ("Appellee"). (Dkt. No. 1.)[1] Before the Court is Appellee's Motion to Dismiss the Appeal pursuant to Federal Rule of Bankruptcy Procedure 8018(a)(1) (the "Motion"). (*See* Not. of Mot. (Dkt No. 20).) For the reasons explained below, Appellee's Motion is granted.

---

[1] Unless otherwise noted, the Court cites to the ECF-stamped page number in the upper-right corner of each page in cites from the record.

I.  Background

A.  Bankruptcy Court Proceedings

Appellee commenced a foreclosure action (the "Foreclosure Action") against Appellants on June 27, 2019, in New York Supreme Court, Dutchess County ("State Court").  (*See* Decl. of Susan Kuruvilla, Esq. in Supp. of Mot. ("Kuruvilla Decl.") (Dkt. No. 22), Ex. 2 (Dkt. No. 22-2).)  The Foreclosure Action sought to foreclose a Note and Mortgage (executed by Shelly Jones individually and by Appellants together, respectively), encumbering real property located in Poughkeepsie, New York (the "Property").  (Kuruvilla Decl. ¶ 3.)

After extensive motion practice, the State Court granted Appellee's motion for summary judgment and issued an Order of Reference.  (*See* Kuruvilla Decl. Ex. 1 ("Ex. 1") (Dkt. No. 22-1).)  Appellants vigorously opposed the Foreclosure Action and filed multiple motions in opposition, including two motions to stay the Action, both of which were denied.  (*See* Kuruvilla Decl. ¶¶ 12–17; *see generally* Ex. 1.)

On February 15, 2024, Appellee filed a Motion to Confirm Referee Report and for a Judgment of Foreclosure and Sale.  (*See* Kuruvilla Decl. ¶ 19; *see* Ex. 1, Dkt. Nos. 237, 239.)  As outlined in the Referee Report, Appellee has paid over $36,000 in escrow advances with respect to the Property, allegedly due to Appellants' default.  (*See* Kuruvilla Decl. ¶ 20; *see* Kuruvilla Decl. Ex. 3 (Dkt. No. 22-3).)  Appellants filed two petitions for bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York, both of which were dismissed.  (*See* Kuruvilla Decl. ¶¶ 22–29; Kuruvilla Decl. Ex. Nos. 4–5 (Dkt Nos. 22-4, 22-5).)

On August 7, 2023, Appellants commenced an adversary proceeding against Appellee in the United States Bankruptcy Court for the Southern District of New York, which constitutes the basis for this appeal.  (Kuruvilla Decl. ¶ 30; *see Jones et al. v. PennyMac Loan Servs., LLC*,

S.D.N.Y. Bankr. Ct., No. 23-09014, Dkt. No. 1 ("Adversary Compl.").) On September 6, 2023, Appellee filed a Motion to Dismiss the Adversary Complaint. (*See* Kuruvilla Decl. Ex. 6 No. 6 ("Bankr. Dkt.") (Dkt. No. 22-6).) Appellants did not oppose the Motion to Dismiss, instead filing a Motion for Default Judgment against Appellee, which was later denied. (Bankr. Dkt. No. 10, 22.) The Bankruptcy Court held oral argument on Appellee's Motion on October 24, 2023, which the Parties attended. (*See* Bankr. Dkt. No. 12.) On November 20, 2023, the Bankruptcy Court issued a Memorandum Decision granting Appellee's Motion to Dismiss the Adversary Proceeding. (*See* Dkt. No. 1 at 16; *see also* Bankr. Dkt. No. 17.)

On January 11 and 12, 2024, Appellants filed Motions for Stays for Foreclosure Proceedings Pending Appeal in their closed second Bankruptcy case and in the Adversary Proceeding, respectively. (*See* Kuruvilla Decl. ¶¶ 28, 33; Kuruvilla Decl. Ex. 5 No. 27; Bankr. Dkt. No. 31.) Both Motions were denied in March 2024. (Kuruvilla Decl. Ex. 5 No. 35; Bankr. Dkt. No. 39.)

B.  Procedural History

On January 10, 2024, Appellants filed a Notice of Appeal from the Bankruptcy Court's Order and a Designation of the Bankruptcy Record on Appeal, (*see* Dkt. Nos. 1, 3), and Appellee filed a Counter Designation, (*see* Dkt. No. 4). The same day, the Clerk of Court noticed the availability of the record on appeal and, in accordance with Federal Rule of Bankruptcy Procedure 8018(a)(1), set February 9, 2024, as the due date for the Appellants' appeal brief. (*See* Dkt. No. 5.) Appellants did not file an appeal brief by that deadline and have not done so as of the date of this Opinion and Order. (*See generally* Dkt.)

On February 21, 2024, Appellants filed a Motion for a Stay of the State Foreclosure Proceedings Pending Appeal. (*See* Dkt. No. 7.) As directed by the Court, (*see* Dkt. No. 8), on

February 29, 2024, Appellee filed a response in opposition to the Stay Motion, (*see* Mem. of Law in Opp'n to Mot. to Stay (Dkt. No. 9); Decl. of Diana M. Eng, Esq. in Opp'n to Mot. to Stay (Dkt. No. 10)).  On March 13, 2024, Appellants filed a Proposed Order to Show Cause for a Preliminary Injunction and Temporary Restraining Order, (*see* Dkt. No. 11), which Appellee asked the Court to reject as duplicative and unnecessary, (*see* Mar. 15, 2024, Ltr. from D. Eng, Esq. (Dkt. No. 12)).  On March 15, 2024, the Court issued two memo endorsements denying the Proposed Order to Show Cause and the Motion to Stay.  (*See* Dkt. Nos. 13–14.)

The following week, Appellee submitted a letter requesting permission to file a Motion to Dismiss on the grounds that Appellants failed to timely file their appeal brief.  (*See* Mar. 21, 2024, Ltr. from D. Eng. (Dkt. No. 15).)  After requesting and receiving an extension of time to respond, (*see* Dkt. Nos. 16–17), Appellants responded to Appellee's letter on April 8, 2024, and requested an unspecified extension of time to file their appeal brief, (*see* Dkt. No. 18).  On April 12, 2024, the Court granted Appellee's request to file a Motion to Dismiss the Bankruptcy Appeal and set a briefing schedule.  (*See* Dkt. No. 19.)

Appellee filed its Motion on March 13, 2024.  (*See* Not. of Mot.; Appellee's Mem. of Law in Supp. of Mot. ("Appellee's Mem.") (Dkt. No. 21); Kuruvilla Decl.)  Appellants filed their Opposition on June 12, 2024.  (*See* Appellants' Mem. in Opp'n to Mot. ("Appellants' Opp'n") (Dkt. No. 24).)  On June 25, 2024, Appellee filed its Reply.  (Appellee's Reply Mem. of Law in Further Supp. of Mot. ("Reply") (Dkt. No. 25).)

## II.  Discussion

### A.  Standard of Review

District courts have jurisdiction to review final bankruptcy orders.  *See* 28 U.S.C. § 158(a)(1) ("The district courts of the United States shall have jurisdiction to hear appeals . . .

from final judgments, orders, and decrees . . . of bankruptcy judges . . . ." (footnote omitted)); *In re DBSD N. Am., Inc.*, 634 F.3d 79, 88 (2d Cir. 2011) (noting that district courts have jurisdiction to "review all final judgments, orders, and decrees of the bankruptcy courts" (citation and quotation marks omitted)). "This Court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *See In re Nordlicht*, No. 21-CV-5990, 2022 WL 1591788, at *3 (S.D.N.Y. May 19, 2022) (citing *Diane Melton Tr. v. Picard (In re Bernard L. Madoff Inv. Sec., LLC)*, No. 15-CV-1151, 2016 WL 183492, at *8 (S.D.N.Y. Jan. 14, 2016)).[2]

Although district courts typically review a bankruptcy court's findings of fact for clear error and conclusions of law de novo, *see, e.g.*, *Am. Home Assurance Co. v. Enron Nat. Gas Mktg. Corp. (In re Enron Corp.)*, 307 B.R. 372, 378 (S.D.N.Y. 2004), "a bankruptcy court's order dismissing a case is reviewed under an abuse of discretion standard," *In re Heredia*, No. 23-CV-403, 2024 WL 691331, at *4 (S.D.N.Y. Feb. 20, 2024) (alterations adopted) (quoting *Holt v. JPMorgan Chase Bank, N.A.*, No. 18-CV-3073, 2019 WL 452056, at *1 (S.D.N.Y. Feb. 5, 2019)); *accord Blaise v. Wolinsky (In re Blaise)*, 219 B.R. 946, 949–50 (B.A.P. 2d Cir. 1998) ("Use of the word 'may' [in § 1307(c)] indicates that the decision to dismiss . . . is committed to the discretion of the bankruptcy court."); *In re Murray*, 565 B.R. 527, 530 (S.D.N.Y. 2017) ("Because a bankruptcy court's decision to dismiss for cause is guided by equitable principles, it is reviewed for abuse of discretion." (citing *In re Smith*, 507 F.3d 64, 73 (2d Cir. 2007))). "A bankruptcy court exceeds its allowable discretion where its decision (1) 'rests on an error of law

---

[2] While the quoted language, formerly found in Rule 8013, is no longer contained in the Federal Rules of Bankruptcy Procedure, "logic still compels the same conclusion with respect to the appellate powers of the District Court." *In re Bernard L. Madoff Inv. Sec., LLC*, No. 15-CV-1151, 2016 WL 183492, at *8 n.14 (S.D.N.Y. Jan. 14, 2016).

(such as application of the wrong legal principle) or a clearly erroneous factual finding,' or (2) 'cannot be located within the range of permissible decisions,' even if it is 'not necessarily the product of a legal error or a clearly erroneous factual finding.'" *In re Smith*, 507 F.3d at 73 (alteration adopted) (quoting *Schwartz v. Aquatic Dev. Grp., Inc.*, 352 F.3d 671, 678 (2d Cir. 2003)). "As to the factual findings that underlie that decision, an abuse of discretion is deemed to occur only when such findings are clearly erroneous," *In re Blaise*, 219 B.R. at 950, that is, where there is a "definite and firm conviction that a mistake has been committed," *In re Heredia*, 2024 WL 691331, at *4 (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573, (1985)).

"Throughout the adversarial process, a party appearing without counsel is typically afforded leniency." *Waske v. Lehman Bros. Holdings Inc.*, No. 20-CV-5083, 2021 WL 4523495, at *3 (S.D.N.Y. Sept. 30, 2021). Pleadings or motions submitted by pro se litigants "must be construed liberally," and read "to raise the strongest arguments that they suggest." *Id.* (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also In re Motor Liquidation Co.*, No. 11-CV-7893, 2012 WL 398640, at *2 (S.D.N.Y. Feb. 7, 2012) (applying liberal reading principle to pro se bankruptcy appellant). It is nonetheless well established that pro se litigants, including litigants in bankruptcy proceedings, are "required to learn and comply with procedural rules." *Waske*, 2021 WL 4523495, at *3 (quoting *In re Truong*, 388 B.R. 43, 45 (S.D.N.Y. 2008)); *see also Edwards v. I.N.S.*, 59 F.3d 5, 8 (2d Cir. 1995) (same).

   B. <u>Analysis</u>

      1. <u>Failure to Timely File</u>

Appellee moves to dismiss the appeal on the grounds that Appellants failed to timely file their appeal brief. (Appellee's Mem. 7.) Specifically, Appellee argues that it has been

6

prejudiced by the delay, which cannot be excused by Appellants' "dilatory, bad faith conduct." (*Id.* at 8–9.)

The Federal Rules of Bankruptcy Procedure provides that "an appellant must serve and file a brief within 30 days after the docketing of notice that the record has been sent or that it is available electronically." Fed. R. Bankr. P. 8018(a)(1). When "an appellant fails to file a brief on time . . ., the district court or [Bankruptcy Appellate Panel] may—on its own after notice or on the appellee's motion—dismiss the appeal." Fed. R. Bankr. P. 8018(a)(4). Relatedly, Rule 8003(a)(2) authorizes a district court to "act as it considers appropriate, including dismissing the appeal," where an appellant "fail[s] to take any step other than the timely filing [of] a notice of appeal." Fed. R. Bankr. P. 8003(a)(2).

The Second Circuit has explained that "[t]he time limitations imposed by [the Bankruptcy Rules] are not jurisdictional, and hence the district court is not required . . . to dismiss the appeal of a party who has failed to meet those deadlines." *In re Berlin & Denmar Distribs., Inc.*, No. 13-B-01315, 2014 WL 4354748, at *1 (S.D.N.Y. Sept. 2, 2014) (quoting *In re Tampa Chain Co., Inc.*, 835 F.2d 54, 55 (2d Cir. 1987)). Because "dismissal is a harsh remedy, not to be utilized without a careful weighing of its appropriateness," *Great Atl. & Pac. Tea Co., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 850 F. App'x 811, 812 (2d Cir. 2021) (summary order) (citation omitted), a court "should determine whether dismissal is appropriate under the circumstances" when considering a party's failure to make timely initial filings, *In re Great Atl. & Pac. Tea Co., Inc.*, 618 B.R. 57, 63 (S.D.N.Y. 2020) (quoting *In re Tampa Chain*, 835 F.2d at 55 (citations omitted)), *aff'd sub nom. Great Atl. & Pac. Tea Co., Inc.*, 850 F. App'x 811; *see also In re Archibald*, No. 23-CV-10462, 2024 WL 2093644, at *2 (S.D.N.Y. May 9, 2024) (same). Generally, courts in the Second Circuit consider the following:

> [(1)] the danger of prejudice to the debtor, [(2)] the length of the delay and its potential impact on judicial proceedings, [(3)] the reason for the delay, including whether it was within the reasonable control of the movant, and [(4)] whether the movant acted in good faith.

*In re Enron Corp.*, 419 F.3d 115, 122 (2d Cir. 2005) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). The Second Circuit has further explained that courts should "focus[] on the third factor," i.e., "the reason for the delay, including whether it was within the reasonable control of the movant," and should take a "hard line" in applying this test, because "[t]he burden of proving excusable neglect lies with the late-claimant." *In re Archibald*, 2024 WL 2093644, at *3 (quoting *In re Enron Corp.*, 419 F.3d at 121–22 (citation omitted)); *see also Veeraswamy v. Jones as Tr. of Estate of Veeraswamy*, No. 19-CV-2129, 2019 WL 6716714, at *1 (E.D.N.Y. Dec. 10, 2019) (dismissing a bankruptcy appeal for failure to file an opening brief); *In re Residential Cap., LLC*, No. 16-CV-8549, 2016 WL 7477558, at *2 (S.D.N.Y. Dec. 28, 2016) (dismissing a bankruptcy appeal for failure to file an opening brief).

It is undisputed that Appellants failed to file their appeal brief within the thirty-day deadline outlined by Rule 8018 and, to date, have not filed their brief. Further, they did not request any extension of time to do so until after Appellee requested permission from this Court to move to dismiss the appeal on timeliness grounds. (*See generally* Dkt.; *see* Mar. 21, 2024, Ltr. from D. Eng at 2–3; Dkt. No. 18 at 1.)

Examining the factors the Court must consider when deciding whether to dismiss a bankruptcy appeal for failure to file a timely brief, the first factor—prejudice to Appellee—weighs against Appellants. Appellee argues it has experienced prejudice because it has paid over $36,000 in escrow advances due to Appellants' default. (Appellee's Mem. 9 n.2; Kuruvilla Decl. ¶ 20; Kuruvilla Decl. Ex. 3.) This clearly weighs in favor of dismissal, because "for a debtor in bankruptcy and its creditors, time is money; and every missed deadline and request for extension

8

potentially delays the payment of money pursuant to the sanctions order." *See Feerst v. CNG Foods LLC*, No. 21-CV-2551, 2021 WL 5594561, at *2 (E.D.N.Y. Nov. 30, 2021) (finding a debtor experienced prejudice due to appellant's failure to timely file a brief).

The second factor—the length of the delay—also weighs in favor of dismissal, albeit more narrowly. By the time the Court issued a briefing schedule on the instant Motion, approximately nine weeks had lapsed since Appellants' missed deadline. (*See* Dkt. No. 19.) Although this delay is "not extreme," it is "also not insignificant in the context of Rule 8018, which sets a thirty-day time limit for filing an appellate brief," and thus weighs in Appellee's favor. *See In re Quebecor World (USA), Inc.*, No. 15-CV-2112, 2015 WL 4877422, at *2 (S.D.N.Y. Aug. 14, 2015) (citation and quotation marks omitted); *Feerst*, 2021 WL 5594561, at *2 (noting a delay of "several months" weighed "marginally" in appellee's favor); *In re Great Atl. & Pac. Tea Co., Inc.*, 618 B.R. at 63 (noting a delay of sixty days "weighs in favor of [appellee], but . . . not heavily").

On the other hand, the fourth factor—whether Appellants acted in good faith—weighs against dismissal. Appellee's argument appears to be that because Appellee does not believe Appellants' excuse for their delay is reasonable, Appellants must have acted in bad faith. (*See* Appellee's Mem. 9–11.) But merely proclaiming "bad faith", without more, does not make it so. Even if the Court concludes that the delay is inexcusable, the Court will not assume bad faith based solely from that finding, particularly the record does not conclusively establish that the delay is attributable to bad faith. Accordingly, this factor weighs in favor of Appellants. *See Feerst*, 2021 WL 5594561, at *2 ("The fourth factor . . . weighs against dismissal because the record does not definitively establish that [a]ppellant acted in bad faith."); *In re Quebecor World (USA), Inc.*, 2015 WL 4877422, at *2 (same).

9

Thus, the third factor is dispositive. Appellants offer two excuses for missing the deadline: first, Appellants claim they were confused by a New York state rule giving an appellant "[six] months to perfect a brief unless there is another timeline given in the case." (Dkt. No. 18 at 1 (citing NYCRR 1250.9(a) and 1250.10(a)).) Appellants argue they "were not aware of the timeline given" here, which they attribute to "a mistake of the law on [their] behalf," and note that in their initial bankruptcy case, they "received a written print out from the court," whereas here, they did not. (*Id.*) Second, Appellants assert they "were in fact consistent (weekly) in communication with the [Southern District of New York] Pro Se Division" and "[e]ach time, . . . were informed that there was nothing on the docket." (Appellants' Opp'n 1–2.) Appellants further argue they "have full intentions to perfect the case," and, "[i]n fact, [they] did await a docket number to submit with our case brief." (*Id.*)

Appellants' excuses do not pass muster. As for their claim they were confused by a New York state rule, they cite that rule as giving them six months to perfect an appeal "*unless* there is another timeline given in the case." (Dkt. No. 18 at 1 (emphasis added).) Here, Rule 8018 provided that clear timeline. *See In re Quebecor World (USA), Inc.*, 2015 WL 4877422, at *2 (noting that "[w]here the rule is entirely clear, . . . a party claiming excusable neglect will, in the ordinary course, lose," and finding that "the rule establishing the time limit in question here"— i.e., Rule 8018—"is entirely clear"). Moreover, even if Appellants were somehow unaware of Rule 8018, they were still notified of the specific deadline as, on the same day the appeal was noticed, the Clerk of Court entered text on the docket plainly stating the "Appellant Brief [is] due by 2/9/2024." (*See* Dkt. No. 5.) Further, even if Appellants somehow missed that notice, they claim to have been in weekly contact with the Court's Pro Se office, which allegedly told them there was "nothing on the docket." (*See* Appellants' Opp'n 1–2.) The assertion is simply not

credible given that a clear deadline was published on the docket from the date the appeal was opened. Accordingly, Appellants' ignorance of the deadlines, even taking into account their pro se status, does not excuse their neglect. *See In re Archibald,* 2024 WL 2093644, at *4 (finding no excusable neglect and noting "a litigant's pro se status should not explain or excuse disregard for . . . his own lawsuit" (alteration adopted) (quoting *Hardimon v. Westchester County*, No. 13-CV-1249, 2014 WL 2039116, at *2 (S.D.N.Y. May 16, 2014))); *see Mena v. City of New York*, No. 15-CV-3707, 2017 WL 6398728, at *2 (S.D.N.Y. Dec. 14, 2017) (noting that "a pro se [litigant] is not exempt from complying with court orders and must diligently prosecute his case." (italics omitted)); *see In re Fletcher Int'l, Ltd.*, 536 B.R. 551, 559 (S.D.N.Y. 2015), *aff'd sub nom. In the Matter of: Fletcher Int'l, Ltd.*, 661 F. App'x 124 (2d Cir. 2016) (finding no excusable neglect where a pro se appellant failed to comply with the Court's clear deadline for filing a brief).

Further, Appellants' assertion that they could not file their appeal brief because they were "await[ing] a docket number" does not hold water. (Appellants' Opp'n 2.) The docket number was assigned from the date of filing. If Appellants were in weekly contact with the Pro Se office, as they claim, they could have easily inquired as to the docket number at any point. Moreover, on February 21, 2024, Appellants filed a Motion to Stay the State Foreclosure Proceedings Pending Appeal, including the docket number on the filing. (*See* Dkt. No. 7.) Plainly, Appellants had access to the docket number by at least that date.³ Even if they somehow did not acquire it until then, they offer no explanation for why at that time they did not file their appeal brief or contact the Court regarding when they would file. *See In re Futterman*, No. 93-

---

³ Appellants also filed a Proposed Order to Show Cause on March 13, 2024, again including the case docket number. (*See* Dkt. No. 11.)

11

B-43718, 2001 WL 282716, at *3 (S.D.N.Y. Mar. 21, 2001) (rejecting appellant's excuse that they failed to receive notice of the docketing of the record on appeal, because "this argument no longer applies once the appellant learns of the docketing"); *In re Truong*, 388 B.R. at 45 (finding a pro se appellant's excuses to be "disingenuous," as appellant "waited over four months after his notice of appeal was docketed before taking any action," despite familiarity with the bankruptcy process and receipt of notice from the Clerk of Court).

Further, Appellants *still* have not filed an appeal brief and have only requested an unspecified extension of time to do so. (*See* Dkt. No. 18 at 1 ("We are hereby requesting additional time in order to perfect the record"); *see also* Appellants' Opp'n 1–2 ("[W]e have full intentions to perfect the case.").) Over a year has passed since Appellants filed their Notice of Appeal; Appellants simply have no excuse for not filing their brief at any point during that time frame, particularly once they were put on notice of the deficiency back in March 2024.[4] (*See* Mar. 21, 2024, Ltr. from D. Eng (letter from Appellee's counsel requesting permission to move to dismiss on the grounds that Appellants failed to file a brief).) Accordingly, Appellants have not met their burden of demonstrating excusable neglect. *See In re Great Atl. & Pac. Tea Co.*, 618 B.R. at 64 (finding "[a]ppellants' explanation for the delay[ed filing] does not constitute excusable neglect," and "appears to be part of a larger pattern of dilatory conduct"); *Koch v. Preuss*, No. 19-CV-2830, 2020 WL 1304084, at *4 (S.D.N.Y. Mar. 18, 2020) (finding pro se appellant's "repeated delays and failures to proceed are without excuse"); *In re Futterman*, 2001 WL 282716, at *3 ("Courts in this [d]istrict have dismissed appeals for an appellant's complete failure to file a brief, as opposed to a late filing." (collecting cases)).

---

[4] Although, arguably, Appellants may be waiting to file their brief until the resolution of the instant Motion, they have not indicated as such to the Court or explained how much additional time they would need to perfect their appeal.

However, "'[w]hile this case may properly be dismissed on procedural grounds alone' due to the untimeliness of Appellants' appeal, the Court is mindful that 'it is important that issues presented by pro se litigants . . . also be addressed on the merits where appropriate.'" *See In re Fletcher Int'l, Ltd.*, 536 B.R. at 559 (alteration adopted) (quoting *Glendora v. Dolan*, 871 F. Supp. 174, 175 (S.D.N.Y. 1994)). Moreover, because "dismissal is a harsh remedy, not to be utilized without a careful weighing of its appropriateness," *Great Atl. & Pac. Tea Co.*, 850 F. App'x at 812, the Court must consider whether a lesser sanction than dismissal is warranted, *see In re Archibald*, 2024 WL 2093644, at *4 (concluding "no sanction less than dismissal will alleviate the ongoing prejudice to [a]ppellee").

The Court concludes that a lesser sanction than dismissing on timeliness grounds is warranted here. Instead, because the Court "needs to avoid calendar congestion and, more importantly, to ensure an orderly and expeditions disposition of all cases before it," *In re Archibald*, 2024 WL 2093644, at *4 (citation omitted), and because Appellants challenge the Bankruptcy Court's decision in their Opposition to the instant Motion, the Court will construe the Opposition as presenting Appellants' arguments on appeal and will decide them on the merits, *see In re Fletcher Int'l, Ltd.*, 536 B.R. at 559 (declining to dismiss pro se appeal due to untimeliness because, "since Appellant[s] ha[ve] raised the same arguments again and again in different fora, resolving Appellant[s'] claims on the merits will hopefully prevent further motions and further waste of judicial resources").

    2. <u>Bankruptcy Appeal</u>

As the Court construes it, Appellants advance three main arguments in support of their appeal: (1) Appellee is not the holder of the Note but instead, a third-party debt collector with no legal claim to the Note, and thus lacks standing to pursue the Foreclosure Action; (2) Appellee

13

never established proof of claim to the real property in question; and (3) Appellee violated the Fair Debt Collection Practices Act ("FDCPA") § 1692(e)(5) by misrepresenting the character and legal status of the debt and by attempting to collect debt it did not own. (*See* Appellants' Opp'n 1–3.) Appellee argues that the Court should reject these arguments because Appellants are relitigating claims that: (1) they did not disclose in their bankruptcy Schedules, and thus do not have standing to raise; and (2) were previously adjudicated against Appellants in the State Court Foreclosure Action and are thus barred by the *Rooker-Feldman* doctrine. (*See* Reply 5.)[5] The Court addresses each argument in turn.

    a. Standing

The Bankruptcy Court concluded that Appellants lacked standing to pursue their claims because they did not disclose those claims in their Debtors' Schedule. (Dkt. No. 1 at 7–8.) The Court agrees.

---

[5] Appellee also argues that because Appellants failed to file an opposition in the Bankruptcy Court, they did not preserve any issues for appeal. (*See* Appellee's Mem. 9–10.) Appellee further argues that Appellants did not substantively respond to this argument in their Opposition in this Court, and thus have waived it. (*See* Reply 4–5.) Because the "waiver doctrine is entirely prudential," the Court "has discretion to consider arguments waived below." *In re Nortel Networks Corp. Sec. Litig.,* 539 F.3d 129, 133 (2d Cir. 2008). Although courts typically will not consider "new arguments on appeal where those arguments were available to the [parties] below and they proffer no reason for their failure to raise the arguments below," *id.*, the Court determines it is still appropriate to consider Appellants' arguments here. For one, the majority of the arguments Appellants proffer are hardly new—indeed, as Appellee argues, these arguments are entirely consistent with and repetitive of those Appellants made in front of both the State Court and the Bankruptcy Court. (*See* Reply 9.) Moreover, Appellants have offered a reason—albeit a weak one—for not submitting an opposition in the Bankruptcy Court and did appear at the Bankruptcy Court hearing to argue their case. (*See* Appellants' Opp'n 5 ("[T]he order states that there was no opposition or argument in court whereas the very document submitted to the court in the process that brought about the hearing contained the argument and opposition."); *see* Bankr. Dkt. No. 12.) In light of the leniency the Court must afford to Appellants' pro se status, *Waske*, 2021 WL 4523495, at *3, the Court in its discretion finds it appropriate to consider Appellants' arguments here.

"When a debtor files for bankruptcy protection, all of his assets at the time of the petition become property of the bankruptcy estate." *Isnady v. Village of Walden*, No. 21-CV-3730, 2022 WL 3587593, at *11 (S.D.N.Y. Aug. 19, 2022) (citing 11 U.S.C. § 541(a)(1)). "Such assets include 'every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative,' including 'causes of action owned by the debtor or arising from property of the estate.'" *Id.* (quoting *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) (per curiam)). "To ensure that the trustee of the estate is able to pursue any claims belonging to the estate, the Bankruptcy Code requires a debtor to disclose all of its actual or potential assets," which includes any "accrued causes of action even if the debtor does 'not know all the facts or even the legal basis for the cause of action.'" *See BPP Ill., LLC v. Royal Bank of Scot. Grp., PLC*, No. 13-CV-638, 2015 WL 6143702, at *5 (S.D.N.Y. Oct. 19, 2015) (citing 11 U.S.C. § 521(a)(1)(B)(i)), *aff'd*, 859 F.3d 188 (2d Cir. 2017). The Second Circuit has explained that "[b]ecause full disclosure by debtors is essential to the proper functioning of the bankruptcy system, the Bankruptcy Code severely penalizes debtors who fail to disclose assets"—namely, providing that "undisclosed assets automatically remain property of the estate after the case is closed," *Chartschlaa*, 538 F.3d at 122, and "the debtor lacks standing to pursue it," *Coffaro v. Crespo*, 721 F. Supp. 2d 141, 148 (E.D.N.Y. 2010) (citing 11 U.S.C. §§ 521(a)(1), 541) (collecting cases); *see also BPP Ill., LLC*, 2015 WL 6143702, at *6 (same); *Ibok v. SIAC-Sector Inc.*, 470 F. App'x 27, 29 (2d Cir. 2012) (summary order) (affirming dismissal of a bankruptcy appeal because appellant "failed to make a written disclosure of the existence of his claims as required under the bankruptcy code[, and,] [a]s a result, he is barred from pursuing his claim here.").

The Court finds no error in the Bankruptcy Court's conclusion. Here, as the Bankruptcy Court found, Appellants did not disclose the claims they brought against Appellee. (*See* Dkt. No. 1 at 7–8.) In Appellants' Schedule A/B, they responded "no" when asked if they "own or have any legal or equitable interest in . . . [c]laims against third parties, whether or not you have filed a lawsuit or made demand for payment[.]" (*See* Bankr. Dkt. No. 6-25 at 17.) Appellants similarly answered "no" when asked if they "own or have any legal or equitable interest in . . . [o]ther contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims." (*Id.*) Thus, because Appellants failed to disclose any of their claims against Appellee, those claims remain part of the bankruptcy estate and can only be asserted by the bankruptcy trustee. Accordingly, the Bankruptcy Court did not abuse its discretion in dismissing Appellants' claims on the grounds that Appellants lacked standing to assert them.

### b. *Rooker-Feldman*

The Bankruptcy Court next concluded that Appellants' claims were barred by the *Rooker-Feldman* doctrine. (Dkt. No. 1 at 8–9.) Again, the Court agrees.

"Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Borrani v. Nationstar Mortg. LLC*, No. 17-CV-9397, 2019 WL 1429982, at *6 (S.D.N.Y. Mar. 29, 2019) (citing *Phillips ex rel. Green v. City of New York,* 453 F. Supp. 2d 690, 712 (S.D.N.Y. 2006) (quotation marks omitted)), *aff'd*, 820 F. App'x 20 (2d Cir. 2020) (summary order). In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the Supreme Court emphasized that this doctrine is "narrow" and only applies to federal lawsuits brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court

proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. After *Exxon Mobil*, the Second Circuit reexamined *Rooker-Feldman* and laid out four conditions that, if met, require the Court to dismiss a plaintiff's claims for lack of subject matter jurisdiction: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Borrani*, 2019 WL 1429982, at *6 (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (alterations omitted)); *see also Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (same). "The Second Circuit has classified the first and fourth requirements as 'procedural' and the second and third requirements as 'substantive.'" *Done v. Wells Fargo, N.A.*, No. 12-CV-4296, 2013 WL 3785627, at *6 (E.D.N.Y. July 18, 2013) (citing *Hoblock*, 422 F.3d at 85).

"*Rooker-Feldman* would not prevent Appellant[s] from 'raising federal claims based on the same facts as a prior state case, . . . so long as . . . [Appellants] complain[] of an injury *independent of* an adverse state court decision.'" *Nath v. Select Portfolio Servicing, Inc.*, No. 15-CV-8183, 2017 WL 782914, at *5 (S.D.N.Y. Feb. 28, 2017) (quoting *Scott v. Capital One, Nat'l Assocs.*, No. 12-CV-183, 2013 WL 1655992, at *3 (S.D.N.Y. Apr. 17, 2013)), *aff'd,* 732 F. App'x 85 (2d Cir. 2018) (summary order). "[T]he applicability of the *Rooker-Feldman* doctrine turns not on the *similarity* between a party's state-court and federal-court claims . . ., but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court." *McKithen v. Brown*, 481 F.3d 89, 97–98 (2d Cir. 2007) (emphases in original). *Rooker-Feldman* does not bar independent claims, even if those claims "den[y] a

17

legal conclusion that a state court has reached in a case to which [the plaintiff] was a party." *Exxon*, 544 U.S. at 293 (internal quotation marks omitted); *see also Hoblock*, 422 F.3d at 86 ("'[I]ndependent claims' . . . are outside *Rooker-Feldman*'s compass even if they involve the identical subject matter and parties as previous state-court suits.").

Here, as the Bankruptcy Court correctly concluded, Appellants' claims are barred under *Rooker-Feldman*. (*See* Dkt. No. 1 at 8–9.) There is no question that the procedural requirements are met here. Appellants lost multiple motions in state court on October 1, 2021, and October 24, 2022, (*see PennyMac Loan Servs., LLC v. Shelly Jones et al.* ("State Ct. Dkt."), No. 2019-52422, Dutchess Cnty. Sup. Ct., Dkt. Nos. 62, 182), well before the Adversary Action was commenced on August 7, 2023, (Kuruvilla Decl. Ex. 6, No. 22-6), making them a "state-court loser" prior to the commencement of this Action, *see Nath v. JP Morgan Chase Bank*, No. 15-CV-3937, 2016 WL 5791193, at *6 (S.D.N.Y. Sept. 30, 2016). As for the substantive requirements, Appellants' Adversary Complaint before the Bankruptcy Court alleges that Appellee lacked standing, engaged in fraudulent practices, did not possess or own the Note, and engaged in predatory lending. (*See* Bankr. Compl, No. 23-09014, Dkt. No. 1 at 2–3, 5.) Essentially, Appellants allege that any determination that Appellee had standing or rights to the Note—and thus, could seek foreclosure against Appellants—was erroneous because of Appellee's fraud and the state court's consideration of fraudulent documents. (*Id.* at 2–3; *see also* State Ct. Dkt. Nos. 62, 182.) Thus, apart from the fact that these are predominantly the same arguments raised and adjudicated before the State Court, (*see* State Ct. Dkt. Nos. 62, 182), Appellants are functionally "seeking to undo the . . . state court judgment . . ., and the [C]omplaint can be construed as alleging injuries that occurred as a result of the judgment," *Borrani*, 2019 WL 1429982, at *8 (citation omitted).

Given that these factual allegations are inextricably intertwined with the state court judgment and could require overturning that judgment if revisited, the Court finds that the substantive requirements of the *Rooker-Feldman* doctrine are met. *See id.* at *8 (applying the *Rooker-Feldman* doctrine where the "Court would necessarily have to review [the state court] judgment to decide [p]laintiff's claims"); *see also Nath*, 2017 WL 782914, at *6 ("[T]o the extent [p]laintiff's Amended Complaint seeks this Court's review of those judgments as the causes of his injuries, then [p]laintiff's claims satisfy the elements of *Rooker-Feldman*."); *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 503–04 (S.D.N.Y. 2016) (holding that mortgagor's claims against bank alleging violations of securities laws, debt collection laws, and the False Claims Act, were barred under *Rooker-Feldman* doctrine, where mortgagor's claims in federal court sought to review the state court's judgment of foreclosure on the grounds that the assignments were invalid and that the bank had no right to the property at issue). Accordingly, the Court concludes that the Bankruptcy Court did not abuse its discretion in determining Appellants' claims were barred by *Rooker-Feldman*.

Thus, even were the Court to excuse Appellants' delay in perfecting this appeal, the judgment of the Bankruptcy Court would be affirmed in all respects.[6]

---

[6] Because the Court affirms the Bankruptcy Court's dismissal on the grounds of lack of standing and *Rooker-Feldman*, there is no need for the Court to examine the merits of Appellants' claims, as did the Bankruptcy Court in its thorough opinion.

19

### III.  Conclusion

For the foregoing reasons, Appellee's Motion to Dismiss is granted.  The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 20), and close this case.

SO ORDERED.

Dated:　　March 12, 2025
　　　　　　White Plains, New York

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　KENNETH M. KARAS
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge